JOHN A. O'MALLEY (Bar No. 101181)
DAVID BEN-MEIR (Bar No. 192028)
**Fulbright & Jaworski LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
john.omalley@nortonrosefulbright.com
david.ben-meir@nortonrosefulbright.com

RICHARD S. ZEMBEK *(to be admitted pro hac vice)*
DANIEL A. PRATI *(to be admitted pro hac vice)*
**Fulbright & Jaworski LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
richard.zembek@nortonrosefulbright.com
danny.prati@nortonrosefulbright.com

SHEILA KADURA *(to be admitted pro hac vice)*
**Fulbright & Jaworski LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
Facsimile: (512) 536-4598
sheila.kadura@nortonrosefulbright.com

Attorneys for Defendants John Wiley & Sons Inc. and John Wiley &
Sons Ltd.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COGENT MEDICINE INC.,<br><br>Plaintiff,<br><br>v.<br><br>JOHN WILEY & SONS INC. and JOHN WILEY & SONS LTD.,<br><br>Defendants. | Case No. 3:13-cv-04486-RS<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COGENT MEDICINE INC.'S COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: March 27, 2014<br>Time: 1:30 PM<br>Location: Courtroom 3<br>Judge: Hon. Richard Seeborg |

DOCUMENT PREPARED
ON RECYCLED PAPER

- 1 -

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 27, at 1:30 PM or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Richard Seeborg, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 3, Floor 17, Defendants John Wiley & Sons Inc. and John Wiley & Sons Ltd. ("Wiley") will and do hereby move the Court for an order dismissing with prejudice the claims for patent infringement against them brought by Plaintiff Cogent Medicine Inc. ("Cogent Medicine") in its Complaint.

Wiley seeks dismissal of Cogent Medicine's Complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the Complaint fails to state a claim against Wiley upon which relief may be granted.  As explained further in the Memorandum of Points and Authorities, Cogent Medicine's patent infringement claims fail because the asserted patent is invalid under 35 U.S.C. § 101 for failing to claim patent-eligible subject matter.  This Motion is based upon this Notice of Motion and Motion to Dismiss, the attached Memorandum of Points and Authorities, all papers and pleadings on file in this action, all matters of which the Court may take judicial notice, and such other pleadings, evidence, and argument as may be considered by the Court.  A proposed order is submitted with this Motion.

DOCUMENT PREPARED
ON RECYCLED PAPER

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................... 1

II.     ISSUE TO BE DECIDED......................................................................... 2

III.    STATEMENT OF FACTS ........................................................................ 2

IV.     LEGAL STANDARDS.............................................................................. 7

        A.     Legal Standard for Motion to Dismiss...................................... 7

        B.     Legal Standard for Complying with 35 U.S.C. § 101 ............ 9

V.      ARGUMENT ........................................................................................... 10

        A.     Independent Method Claim 1 Is Patent-Ineligible ............... 10

        B.     Dependent Claims 2-10 Are Patent-Ineligible ..................... 13

        C.     Method Claim 13 and Dependent Claims 14-19 Are Patent-Ineligible ............... 14

        D.     The Computer Limitations of Claims 11 And 20 Are Insufficient to Confer
               Patent Eligibility ...................................................................... 14

        E.     System Claims 12 And 21 Are Patent-Ineligible ................. 17

        F.     Leave to Amend Would Be Futile .......................................... 19

VI.     CONCLUSION....................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accenture Global Servs, GmbH v. Guidewire Software, Inc.*,
　728 F.3d 1336 (Fed. Cir. 2013)..................................................................... 10, 13, 16, 17, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
　134 S. Ct. 734 (2013) ......................................................................................................... 8

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*,
　687 F.3d 1266 (Fed. Cir. 2012).......................................................... 8, 12, 13, 14, 15, 17, 18

*Bascom Research LLC v. Facebook, Inc.*,
　No. C 12-6293 SI, C 12-6294 SI, 2014 U.S. Dist. LEXIS 4000 (N.D. Cal. Jan. 13,
　2014) .................................................................................................................................. 8

*In re Bilski*,
　545 F.3d 943 (Fed. Cir. 2008) (en banc), *aff'd*, 130 S. Ct. 3218 ........................................... 10

*Bilski v. Kappos*,
　130 S. Ct. 3218 (2010) .......................................................................................... 9, 10, 12, 13

*buySAFE, Inc. v. Google Inc.*,
　No. 11-1282-LPS, 2013 U.S. Dist. LEXIS 105601 (D. Del. July 29, 2013) ........................... 8

*Cardpool, Inc. v. Plastic Jungle, Inc.*,
　No. C 12-04182 WHA, 2013 U.S. Dist. LEXIS 9280 (N.D. Cal. Jan. 22, 2013).......... 1, 8, 16

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
　717 F.3d 1269 (Fed. Cir. 2013)........................................................................................... 8

*CMG Financial Servs., Inc. v. Pacific Trust Bank, FSB*,
　No. CV 11-10344 PSG (MRW) (C.D. Cal. Dec. 16, 2013)................................................. 8

*Compression Tech. Solutions LLC v. EMC Corp.*,
　No. C-12-01746 RMW, 2013 U.S. Dist. LEXIS 78338 (N.D. Cal. May 29, 2013) .......... 8, 15

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
　Nos. 12-2501, 12-6960 (MAS) (TJB), 2013 U.S. Dist. LEXIS 107184 (D.N.J. July 31,
　2013) .................................................................................................................................. 8

*CyberFone Sys., LLC v. Cellco P'ship*,
　885 F. Supp. 2d 710 (D. Del. 2012).................................................................................... 14

*CyberSource Corp. v. Retail Decisions, Inc.*,
　654 F.3d 1366 (Fed. Cir. 2011)...................................................................... 11, 12, 15, 17, 19

*Data Distribution Techs., LLC v. Brer Affiliates, Inc.*,
　No. 12-4878 (D.N.J. Jan. 15, 2014) ..................................................................................... 8

*Dealertrack, Inc. v. Huber*,
　674 F.3d 1315 (Fed. Cir. 2012).............................................................................. 13, 15, 17

DOCUMENT PREPARED
ON RECYCLED PAPER

*DeSoto v. Yellow Freight Sys., Inc.*,
   957 F.2d 655 (9th Cir. 1992) .................................................................................... 19

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980) .............................................................................................. 9

*Fort Props., Inc. v. American Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012) ........................................................................ 16, 18

*Glory Licensing LLC v. Toys R Us, Inc.*,
   No. 09-4252 (FSH), 2011 U.S. Dist. LEXIS 51888 (D.N.J. May 16, 2011) ........................... 8

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) ............................................................................................ 9, 16

*Highmark, Inc. v. Allcare Health Management Sys., Inc.*,
   687 F.3d 1300 (Fed. Cir. 2012) .................................................................... 1, 16, 19

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) ....................................................................... 9, 12, 13, 16, 18

*Noah Sys., Inc. v. Intuit, Inc.*,
   675 F.3d 1302 (Fed. Cir. 2012) ................................................................................. 7

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   No. C-12-1233 EMC, 2012 U.S. Dist. LEXIS 129396 (N.D. Cal. Sept. 11, 2012) ...... 8, 12, 17

*Parker v. Flook*,
   437 U.S. 584 (1978) .............................................................................................. 9

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987) .................................................................................... 7

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) ................................................................................ 19

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) ............................................................................... 15

*State Street Bank & Trust Co. v. Signature Financial Group, Inc.*,
   149 F.3d 1368 (Fed. Cir. 1998) ............................................................................... 10

*The Money Suite Co. v. 21st Century Ins. and Financial Servs., Inc.*,
   No. 1:13-cv-984-GMS (D. Del. Jan. 9, 2014) ............................................................. 8

*UbiComm, LLC v. Zappos IP, Inc.*,
   No. 13-1029-RGA, 2013 U.S. Dist. LEXIS 161559 (D. Del. Nov. 13, 2013) .................. 8, 16

*Ultramercial, Inc. v. Hulu, LLC*,
   722 F.3d 1335 (Fed. Cir. 2013) ........................................................... 1, 8, 9, 10, 15

*Vacation Exchange, LLC v. Wyndham Exchange & Rentals, Inc.*,
   No. CV 12-04229 RGK (C.D. Cal. Sept. 18, 2012) ..................................................... 18

DOCUMENT PREPARED
ON RECYCLED PAPER

- iii -

**RULES AND STATUTES**

35 U.S.C. § 101 ...................................................................... 1, 2, 7, 8, 9, 10, 12, 13, 14, 16, 17, 19

Federal Rule of Civil Procedure 12 .......................................................................... 1, 2, 7, 8, 10, 19

DOCUMENT PREPARED
ON RECYCLED PAPER

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.      INTRODUCTION

3         Cogent Medicine Inc.'s ("Cogent Medicine") claims for patent infringement against

4   Defendants John Wiley & Sons Inc. and John Wiley & Sons Ltd. ("Wiley") should be dismissed

5   under Federal Rule of Civil Procedure 12(b)(6) because the asserted patent, U.S. Patent No.

6   7,133,879 ("the '879 Patent"), fails to claim patent-eligible subject matter and is thus invalid

7   under 35 U.S.C. § 101.

8         The '879 Patent claims the abstract idea of providing information to a requester according

9   to the requester's preferences, which Cogent Medicine refers to as a "personalized library

10  interface."  Such an abstract idea is not patent-eligible when, as here, the patent claims lack any

11  meaningful limitations on the abstract idea, such as a tie to a specialized computer.  Indeed, most

12  of the claims do not recite a computer at all, and the methods can be performed by a human using

13  a pen, paper, and physical file folders.  Further, even for those claims that include a computer

14  element, the recited elements cannot render the claims patent-eligible because the computer is

15  used only for its most basic functions of receiving, storing, organizing, and transmitting

16  information.  The '879 Patent is therefore an improper attempt to achieve patent protection on the

17  fundamental concept of a personalized library interface "without a concomitant contribution to

18  the existing body of scientific and technological knowledge."  *Highmark, Inc. v. Allcare Health*

19  *Management Sys., Inc.*, 687 F.3d 1300, 1324 (Fed. Cir. 2012).

20        Whether a claim recites patent-eligible subject matter is a question of law that may be

21  resolved on a motion to dismiss.  *See Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338-40

22  (Fed. Cir. 2013) (providing standards for determining patent eligibility on a motion to dismiss);

23  *Cardpool, Inc. v. Plastic Jungle, Inc.*, No. C 12-04182 WHA, 2013 U.S. Dist. LEXIS 9280, at *9

24  (N.D. Cal. Jan. 22, 2013) ("There is no authority for the proposition that a patent may not be

25  deemed ineligible subject matter on a motion to dismiss.").  Claim construction is not a necessary

26  prerequisite to determining patent eligibility under 35 U.S.C. § 101.  *Ultramercial*, 722 F.3d at

27  1339 ("This court has never set forth a bright line rule requiring district courts to construe claims

28

DOCUMENT PREPARED
ON RECYCLED PAPER

- 1 -

before determining subject matter eligibility.").  As Chief Judge Rader has recognized, early dispositive motions are the key to "removing the abusers from the system before they can do their damage by imposing expense on the system, for example, when they seek nuisance settlements from many entities.  An impotent summary judgment process encourages nuisance settlement strategies because the accused has to assume they will bear the full cost of trial to vindicate their position."[1]  This is equally true for meritorious Rule 12 motions that present dispositive questions of law.

## II.      ISSUE TO BE DECIDED

Whether Cogent Medicine's patent infringement Complaint should be dismissed because the asserted claims of the '879 Patent are invalid for failure to recite patent-eligible subject matter under 35 U.S.C. § 101.

## III.     STATEMENT OF FACTS

John Wiley & Sons, Inc. is a 207 year old publishing company based in Hoboken, New Jersey.  Wiley hosts an "online library," which contains its electronically published journals.  A small portion of Wiley's online library hosts the Cochrane Library, which Wiley licenses from the Cochrane Collaboration, a non-profit organization based in the United Kingdom.  The Cochrane Collaboration is run by a small staff who coordinate the work of a global network of volunteers dedicated to improving medical outcomes around the world through the use of evidence-based medicine.

Cogent Medicine is a non-practicing entity; its business model is to seek to enforce patent rights.  It sued Wiley on September 27, 2013, alleging that Wiley's "Cochrane Library product and service" infringe the '879 Patent.  *See* Doc. 1 ("Compl.") at ¶ 11.

According to Cogent Medicine, the '879 Patent "claims a computer-implemented method for providing users with a personal library interface containing medical literature."  *Id.* at ¶ 10. The '879 Patent states that the "invention relates to methods for organizing the presentation of data to a user via a website or other computer display by creating a personalized library interface

---

[1]  The text of Chief Judge Rader's speech is available at:   http://patentlyo.com/wp-content/uploads/2013/11/Rader%202013%20ED%20Tex%20BB%20Speech.pdf.

DOCUMENT PREPARED
ON RECYCLED PAPER

to data sets." Ex. 1[2] at 1:15-18.[3]  Figure 5 of the '879 Patent describes the basic concept underlying the claims of the patent and is reproduced below:



According to Figure 5, step 1 of the method is "accept search strategy from user," and step 2 is "accept user request to view information."  In other words, the user provides a search strategy (e.g., a list of keywords, *see id.* at 2:45-46), and the user later requests to view information.  In response, "all information corresponding to a search strategy," only "recent information corresponding to a search strategy," or "information pre-selected by an entity other than the user" is provided. *Id.* at 5:41-45.

Figure 1 of the patent "depicts an illustrative interface display for use in accordance with one embodiment of the present invention." *Id.* at 1:65-67.  Figure 1 is reproduced below:

---

[2] Cogent Medicine did not attach a copy of the '879 Patent to its Complaint.  Thus, Wiley has attached a copy of the '879 Patent to this motion.
[3] References to text in the '879 patent are provided as X:Y, where X is the column number and Y is the line number.

DOCUMENT PREPARED
ON RECYCLED PAPER

Reminiscent of the file hierarchy that a medical librarian (or anyone interested in this research topic) might maintain in a file cabinet, Figure 1 depicts that medical information regarding a select topic (e.g., non-small cell lung cancer in Figure 1) may be organized into folders, such as: a folder containing new citations, a folder containing saved items, a folder containing all citations, and a folder containing items chosen by an editor. *See id.* at 2:56-59. All of the folders on that select topic could be contained in a folder directed to a broader topic (e.g., "Lung and Mediastinum" in Figure 1). *See id.* at 2:59-62. "Thus, a hierarchy of folders is created." *Id.* at 2:62.

Figures 3 and 4 are similar to Figure 1, but each of Figures 3 and 4 also depicts an open folder and its contents, reminiscent of how a librarian (or anyone doing research) might open a file folder and peruse its contents. For example, in Figure 3, the editor's-choice folder is open such that its contents can be viewed. *See id.* at 4:22-24.

The '879 Patent includes two independent method claims and two independent system claims. Each of independent method claims 1 and 13 recites "[a] method for providing data to a user from one or more data sets." *Id.* at 6:11-12, 7:36-37. Like Figure 5, both claims describe a

1   method for providing medical information to a requester based on the requester's preferences.

2   Claim 1 recites:

3       A method for providing data to a user from one or more data sets, said method
4       comprising:

5       accepting from a user and storing one or more search strategies directed to medical
        literature in data folders wherein said storage is for repeat use by a user, each of
6       said one or more search strategies associated with one or more of said one or more
        data sets;

7       and accepting from said user a request to view medical information, and, based on
        said request, selectively providing data set information in said data folders
8       comprising preselected medical information for said user or users from said one or
        more data sets, said medical information having been preselected and placed in
9       said folder by a specialist for said user or users and

10      at least one of (a) medical information from said one or more associated data sets
        corresponding to one of said search strategies directed to medical literature
11      wherein said medical information is added to the said one or more data sets since
        the last time said user accessed said one or more associated data sets; or (b)
12      medical information corresponding to one of said search strategies directed to
        medical literature wherein said medical information is not limited in time.
13

14  *Id.* at 6:11-34.   According to claim 1, in the first step of the method, a user provides search

15  strategies for searching medical literature, and those search strategies are stored in data folders for

16  repeat use.   In the second step, the user requests medical information, and, based on the user's

17  request, medical information that was preselected by a specialist is provided to the user.   The last

18  paragraph of claim 1 explains that either (a) only new medical information corresponding to the

19  search strategy is provided (i.e., new information since the last time the user accessed the data

20  sets) or (b) all medical information corresponding to the search strategy is provided (i.e., the

21  medical information is not limited in time).   Claim 1 does not recite a computer or any

22  components of a computer.

23      Independent method claim 13 is similar to (but in some ways broader than) method claim

24  1.  It recites:

25      A method for providing data to a user from one or more data sets, said method
        comprising:
26
        accepting from a user and storing one or more search strategies directed to medical
27      literature, each of said one or more search strategies associated with one or more
        of said one or more data sets;
28

- 5 -

DOCUMENT PREPARED
ON RECYCLED PAPER

accepting from a user a request to view medical information;

providing data set information in data folders comprising medical information from said one or more associated data sets corresponding to one of said search strategies directed to medical literature;

and providing data set information in data folders comprising preselected medical information for said user or users from said one or more data sets, said medical information having been preselected and placed in said folder by a specialist for said user or users.

*Id.* at 7:36-52.  Unlike claim 1, which describes providing all responsive information versus providing only recent information, claim 13 does not discuss time limits for the information provided.  In addition, claim 13 describes providing both preselected medical information *and* providing medical information that is not preselected, as set out in the last two steps of the method.  The '879 Patent states that the preselected medical information may be advertising information about the preselecting entity's product or service.  *See id.* at 1:50-57.  Like claim 1, claim 13 does not recite a computer or any components of a computer.

Claims 2-11 are dependent on claim 1, and claims 14-20 are dependent on claim 13. These dependent claims recite various additional features of the claimed methods, but most do not recite a computer or any components of a computer.  For example, claims 3 and 14 recite that the preselected information in claim 1 or claim 13, respectively, is "preselected by an expert."  *Id.* at 6:43-44, 8:1-2.  As another example, claims 6 and 17 state that one or more of the search strategies are "provided by an expert."  *Id.* at 6:64-65, 8:22-23.  The only dependent claims that refer to any computer elements are claims 11 and 20, which recite generic computer structures: "[a]t least one of an operating system, a computer-readable medium having stored thereon a plurality of computer-executable instructions, a co-processing device, and, a computing device for performing the method of" claim 1 or claim 13, respectively.  *Id.* at 7:9-12, 8:29-32.

The two remaining claims of the '879 Patent (claims 12 and 21) are system claims, each of which recites "[a] system for providing data to a user."  *Id.* at 7:13, 8:33.  System claim 12 repeats the language of method claim 1, except that it recites a "user interface and storage means for" performing the first accepting step of claim 1 and a "user input and display means" for performing the second accepting step of claim 1.  *Id.* at 7:14-35.  Similarly, system claim 21

- 6 -

DOCUMENT PREPARED
ON RECYCLED PAPER

repeats the language of method claim 13, except that it includes a "user interface and storage means" for performing the first accepting step of claim 13, a "data input means" for performing the second accepting step of claim 13, and "display means" for performing the two providing steps of claim 13.  *Id.* at 8:34-50.[4]

Cogent Medicine states that the '879 Patent "claims a computer-implemented method" (Compl. at ¶ 10), and the '879 Patent states that the invention is carried out using a "website" or "computer display" that is provided by a "computer" or a "computer system."  Ex. 1 at 1:13-17, 2:19-20, 5:56-57.  The '879 Patent does not describe any particular type of computer for use with the invention or any particular software for programming a computer to perform the claimed methods.  Regarding the computer or computer system, the '879 Patent describes only general purpose computer elements:

> A user interface, such as a keyboard, a touchscreen, or a mouse in combination with a display may be used to interact with the user.  Computer storage may store hierarchy and search information.  Information is accepted from the user from a user input means, such as a keyboard or mouse.  And a display is used to display information to a user.  Other display means, such as a printer, may also be used. Data may be stored for later display.

*Id.* at 5:57-64.

## IV.   LEGAL STANDARDS

### A.   LEGAL STANDARD FOR MOTION TO DISMISS

"The purpose of F. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery."  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987); *see also id.* ("[I]f the allegations of the complaint fail to establish the requisite elements of the cause of action, our requiring costly and time consuming discovery and trial work would represent an abdication of our judicial responsibility.") (quotation marks omitted).

---

[4] In addition to being invalid under 35 U.S.C. § 101, as argued in this motion, system claims 12 and 21 are also invalid for failing to disclose the requisite structure that corresponds to the functions recited for one or more of the "means" terms in each claim.  *See, e.g.*, *Noah Sys., Inc. v. Intuit, Inc.*, 675 F.3d 1302, 1311-12 (Fed. Cir. 2012).

DOCUMENT PREPARED
ON RECYCLED PAPER

Patent eligibility can be determined on a motion to dismiss.  *See Ultramercial*, 722 F.3d at 1338-40; *Cardpool*, 2013 U.S. Dist. LEXIS 9280, at *9-10 (granting motion to dismiss patent infringement claims under 35 U.S.C. § 101); *OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233 EMC, 2012 U.S. Dist. LEXIS 129396, at *68-69 (N.D. Cal. Sept. 11, 2012) (same); *see also UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029-RGA, 2013 U.S. Dist. LEXIS 161559, at *19-21 (D. Del. Nov. 13, 2013) (same); *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, Nos. 12-2501, 12-6960 (MAS) (TJB), 2013 U.S. Dist. LEXIS 107184, at *6, *40 (D.N.J. July 31, 2013) (same); *buySAFE, Inc. v. Google Inc.*, No. 11-1282-LPS, 2013 U.S. Dist. LEXIS 105601, at *1, 14 (D. Del. July 29, 2013) (invalidating patent claims under 35 U.S.C. § 101 on a Rule 12(c) motion on the pleadings); *Glory Licensing LLC v. Toys R Us, Inc.*, No. 09-4252 (FSH), 2011 U.S. Dist. LEXIS 51888, at *1, *18 (D.N.J. May 16, 2011) (invalidating patent claims under 35 U.S.C. § 101 on a Rule 12(b)(6) motion to dismiss).[5]

Claim construction is not a necessary prerequisite to determining patent eligibility. *Ultramercial*, 722 F.3d at 1339 ("This court has never set forth a bright line rule requiring district courts to construe claims before determining subject matter eligibility."); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101."); *Compression Tech. Solutions LLC v. EMC Corp.*, No. C-12-01746 RMW, 2013 U.S. Dist. LEXIS 78338, at *3 (N.D. Cal. May 29, 2013) (assessing patent eligibility under Section 101 "as a threshold matter prior to claim construction and discovery").

---

[5] The U.S. Supreme Court has granted certiorari in *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013), in which the en banc Federal Circuit was unable to issue a majority opinion determining whether the computer elements recited in the claims were sufficient to confer patent eligibility under 35 U.S.C. § 101.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 734 (2013).  Some courts have stayed cases pending the Supreme Court's decision in *CLS Bank*.  *See, e.g.*, *Data Distribution Techs., LLC v. Brer Affiliates, Inc.*, No. 12-4878 (JBS/KMW) (D.N.J. Jan. 15, 2014) (Ex. 2); *Bascom Research LLC v. Facebook, Inc.*, No. C 12-6293 SI, C 12-6294 SI, 2014 U.S. Dist. LEXIS 4000 (N.D. Cal. Jan. 13, 2014); *The Money Suite Co. v. 21st Century Ins. and Financial Servs., Inc.*, No. 1:13-cv-984-GMS (D. Del. Jan. 9, 2014) (Ex. 3); *CMG Financial Servs., Inc. v. Pacific Trust Bank, FSB*, No. CV 11-10344 PSG (MRW) (C.D. Cal. Dec. 16, 2013) (Ex. 4).

DOCUMENT PREPARED
ON RECYCLED PAPER

## B.     LEGAL STANDARD FOR COMPLYING WITH 35 U.S.C. § 101

Under 35 U.S.C. § 101 ("Section 101"), a patent may be granted on "any new and useful process, machine, manufacture, or composition of matter." However, laws of nature, abstract ideas, and natural phenomena are not eligible for a patent. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012); *see also Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). That is because allowing patents on such matters would effectively grant the patentee an impermissible monopoly over an entire concept. *See, e.g.*, *Mayo*, 132 S. Ct. at 1293 ("[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it."); *see also Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972).

Thus, when a patent lays claim to an abstract idea, it is not patent-eligible unless it adds "significantly more" to the abstract idea. *Mayo*, 132 S. Ct. at 1294; *see also Bilski v. Kappos*, 130 S. Ct. 3218, 3230 (2010); *Parker v. Flook*, 437 U.S. 584, 593-94 (1978). A claim directed to an abstract idea does not become patent-eligible merely because it is limited to "a particular technological environment" or recites "insignificant post-solution activity" or "well understood, routine, conventional activity." *Mayo*, 132 S. Ct. at 1294, 1297-98. Instead, for the claim to be patent-eligible, it must "include[] *meaningful* limitations restricting it to an application," such that the claim does not "pre-empt[] all practical uses of an abstract idea." *Ultramercial*, 722 F.3d at 1344, 1346 (emphasis in original); *see also Mayo*, 132 S. Ct. at 1294 (claimed method that described a natural law was patent-ineligible because it lacked "elements or a combination of elements, sometimes referred to as an 'inventive concept,' sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the natural law itself").

As another example, a claim may be determined to recite "significantly more" than an abstract idea if it passes the machine-or-transformation test—i.e., if it is "tied to a particular machine or apparatus" or "transforms a particular article into a different state or thing." *Bilski*,

- 9 -

DOCUMENT PREPARED
ON RECYCLED PAPER

1  130 S. Ct. at 3234; *id.* at 3226-27 (the machine-or-transformation test is an "important and useful

2  clue" to determining patent eligibility under Section 101).[6]

3  **V.    ARGUMENT**

4      The Federal Circuit has identified a two-step approach for determining whether a claimed

5  invention is patent-eligible under 35 U.S.C. § 101.  *Accenture Global Servs, GmbH v. Guidewire*

6  *Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013).  "First, the court must identify whether the

7  claimed invention fits within one of the four statutory classes set out in § 101.  Second, one must

8  assess whether any of the judicially recognized exceptions to subject-matter eligibility apply,

9  including whether the claims are to patent-ineligible abstract ideas."  *Id.*  (internal citations and

10 quotation marks omitted).

11     The claims of the '879 Patent purport to be directed to processes (i.e., methods) or

12 machines (i.e., systems), which are generally included in the statutory classes listed in Section

13 101.  However, the only plausible reading of the '879 Patent reveals that the claims are actually

14 directed to patent-ineligible abstract ideas.  Thus, dismissal under Rule 12(b)(6) is appropriate.

15 *See Ultramercial*, 722 F.3d at 1339.

16     **A.    INDEPENDENT METHOD CLAIM 1 IS PATENT-INELIGIBLE**

17     When assessing whether a patent claim is an ineligible abstract idea, the court performs a

18 two-step inquiry.  First, the court identifies the "fundamental concept" in the claims.  *Accenture*,

19 728 F.3d at 1341.  ("In the case of abstractness, the court must first identify and define whatever

20 fundamental concept appears wrapped up in the claim.") (internal quotation marks omitted).

21 Second, the court determines whether the additional substantive limitations recited in the claim

22 sufficiently "narrow, confine, or otherwise tie down the claim so that, in practical terms, it does

23 not cover the full abstract idea itself."  *Id.* (internal quotation marks omitted).

---

24 [6] During prosecution of the '879 Patent application, the claims were initially rejected by the

25 patent examiner as directed to patent-ineligible subject matter.  The patent applicant overcame
   that rejection by relying on the "useful, concrete and tangible result" analysis articulated in *State*

26 *Street Bank & Trust Co. v. Signature Financial Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998).  The
   Federal Circuit has since expressly overruled *State Street*'s reliance on the "useful, concrete and

27 tangible result" analysis.  *See In re Bilski*, 545 F.3d 943, 960 n.3 (Fed. Cir. 2008) (en banc)
   ("[T]hose portions of our opinions in *State Street* and *AT&T* relying solely on a 'useful, concrete

28 and tangible result' analysis should no longer be relied on."), *aff'd*, 130 S. Ct. 3218.

DOCUMENT PREPARED
ON RECYCLED PAPER

1    In this case, there is no dispute as to the fundamental concept in the claims because

2    Cogent Medicine identifies that concept in its Complaint.  Specifically, Cogent Medicine admits

3    that the claims of the '879 Patent are directed to "providing users with a personal library interface

4    containing medical literature," which is itself an abstract idea.  *See* Compl. at ¶ 10; *see also id.*

5    ("Claims 2-21 of the '879 patent describe various other methods and a system of personalized

6    library interface for providing users with medical data.").  Thus, the relevant question for this

7    Court is whether the additional limitations in claim 1 sufficiently narrow that fundamental

8    concept so as to prevent coverage of the abstract idea itself.  For the reasons set forth below, the

9    answer is no.

10    Methods that can be performed "in the human mind, or by a human using a pen and

11    paper" are unpatentable abstract ideas.  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d

12    1366, 1372 (Fed. Cir. 2011).  Claim 1 of the '879 Patent is such a method.  Claim 1 does not

13    recite a computer or any components of a computer, and a human (such as, for example, a

14    librarian) could perform each step of the method without the aid of a computer.  Regarding the

15    first step of claim 1, a librarian could accept a search strategy directed to medical literature from a

16    user, write it down, place it in a folder, and file it away for repeat use.  For the second step of

17    claim 1, the librarian could accept a request from the user to view medical information, and,

18    based on the request, selectively provide medical information to the user in folders.  In this

19    scenario, the medical information may have been preselected by a "specialist."  For example, if

20    the search strategy related to a particular medical disease, the librarian could consult a medical

21    encyclopedia containing information that was preselected by the specialist(s) who compiled the

22    medical encyclopedia, and the librarian could provide the user with articles from the medical

23    encyclopedia that meet the user's search criteria.  Regarding the last paragraph of claim 1, the

24    librarian could provide all information responsive to the user's search strategy, or, if the user

25    prefers, the librarian could provide only recent information.  Thus, similar to the claim at issue in

26    *CyberSource*, *id.* at 1372-73, all of the recited steps can be performed by a human using a pen,

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

- 11 -

paper, physical file folders, and books in a library.  As in *CyberSource*, claim 1 is therefore "merely an abstract idea and is not patent-eligible under § 101." *Id.* at 1373.

Another way to assess patent eligibility is under the machine-or-transformation test, which like the analysis above, also reveals that claim 1 is patent-ineligible.  Under that test, a claim directed to an abstract idea may be patent-eligible if it is "tied to a particular machine or apparatus" or "transforms a particular article into a different state or thing." *Bilski*, 130 S. Ct. at 3230.  Claim 1 fails both prongs of the test.  First, claim 1 fails the "machine" prong because it does not recite a computer or any component of a computer.  Instead, "the plain language of [the claim] does not require the method to be performed by a particular machine, or even a machine at all." *CyberSource*, 654 F.3d at 1370.  Indeed, the fact that other claims of the '879 Patent recite computer-related elements supports the conclusion that claims lacking such elements do not require implementation on a computer.  *See Bancorp*, 687 F.3d at 1275.  Second, the mere "transformation of data," such as the collection and organization of data described in claim 1, is insufficient to meet the transformation prong.  *See id.* at 1374 ("The mere manipulation or reorganization of data, however, does not satisfy the transformation prong."); *OIP Techs.*, 2012 U.S. Dist. LEXIS 129396, at *60 ("the collection and use of data does not render an invention patent-eligible under § 101").

Because claim 1 is directed to an abstract idea that is not tied to a machine or transformation and can be performed by a human without the aid of a computer, the claim improperly grants a monopoly over the abstract idea itself.  The fact that the claim limits the abstract idea to "medical information"—as opposed to other types of information—does not affect the analysis because limiting an abstract idea to one field of application cannot make the abstract idea patent-eligible.  *Mayo*, 132 S. Ct. at 1297-98 ("[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment.") (internal quotations omitted); *Bilski*, 130 S. Ct. at 3231 (abstract concept of hedging risks was not patentable even if limited to the commodities and energy markets because "limiting an abstract idea to one field of use . . . [does] not make the concept

DOCUMENT PREPARED
ON RECYCLED PAPER

patentable"); *Bancorp Servs.*, 687 F.3d at 1280 (rejecting argument that "claims are not abstract because they are limited to use in the life insurance market"); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) (claim's limitation to the field of car loans did not render it patent-eligible).

## B.   DEPENDENT CLAIMS 2-10 ARE PATENT-INELIGIBLE

Claims 2-10, which are dependent on method claim 1, fail to recite patent-eligible subject matter for the same reasons provided above for claim 1.  Namely, claims 2-10 do not recite a computer or any computer elements, and the steps can be performed by a human without the aid of a computer.  For example, claim 2 merely adds that the user can provide document identifiers or documents and can later request to view information from those stored documents.  *See* Ex. 1 at 6:35-42.  To accomplish that step, the user could give a list of document identifiers or documents to a librarian for storage, and the user can later request to view the stored information. Similarly, the limitations in claim 5 directed to a specialist's involvement in developing data folders can be accomplished by a human using physical file folders.  *See id.* at 6:47-63.

In addition, the limitations recited in dependent claims 2-10 represent "insignificant post-solution activity," which cannot make an abstract idea patent-eligible.  *See Bilski*, 130 S. Ct. at 3230; *see also Mayo*, 132 S. Ct. at 1298.  For example, the identification of the entity that provides preselected information or search strategies is insignificant to the idea of a personalized library interface.  *See* Ex. 1 at 6:43-46 (claims 3-4), 6:64-67 (claims 6-7).  The same is true for limitations describing the way data is identified, such as using citation information to identify a document. *See id.* at 7:1-8 (claims 8-10).

Rather than providing additional substantive limitations that narrow or confine the fundamental concept of "providing users with a personal library interface containing medical literature," dependent claims 2-10 claim that concept itself.  *See Accenture*, 728 F.3d at 1341. The claims are thus invalid under Section 101.

DOCUMENT PREPARED
ON RECYCLED PAPER

**C.     METHOD CLAIM 13 AND DEPENDENT CLAIMS 14-19 ARE PATENT-INELIGIBLE**

Like claim 1, claim 13 is directed to a patent-ineligible abstract idea.  Claim 13 is similar to claim 1, but it is arguably broader in that claim 13 does not discuss time limits for the information provided.  *See* Ex. 1 at 7:36-52.  In addition, claim 13 describes providing preselected medical information, such as advertising information, and also providing medical information that is not preselected.  *See id.* at 7:44-52, 8:3-4.  However, claim 13 is like claim 1 in that all of the steps of claim 13 can be performed by a human without the aid of a computer.  Namely, a librarian can accept and store search strategies directed to medical literature, accept a request to view medical information, and provide: (a) medical information corresponding to the search strategies and (b) preselected medical information corresponding to the search strategies.

Dependent claims 14-19 likewise do not recite a computer or any computer elements.  Instead, they recite the same limitations of claims 2-10 that are discussed above.  Accordingly, claims 14-19 fail under Section 101 for the same reasons as discussed above for claims 2-10.

**D.     THE COMPUTER LIMITATIONS OF CLAIMS 11 AND 20 ARE INSUFFICIENT TO CONFER PATENT ELIGIBILITY**

Dependent claims 11 and 20 recite "[a]t least one of an operating system, a computer-readable medium having stored thereon a plurality of computer-executable instructions, a co-processing device, and, a computing device for performing the method of" claim 1 or claim 13, respectively.  *Id.* at 7:9-12, 8:29-32.  Those limitations do not render claims 11 and 20 patent-eligible because the computer-related limitations are used only for their most basic functions of receiving, storing, organizing, and transmitting information.  *See Bancorp*, 687 F.3d at 1278 ("[U]se of a computer in an otherwise patent-ineligible process for no more than its most basic function—making calculations or computations—fails to circumvent the prohibition against patenting abstract ideas and mental processes."); *CyberFone Sys., LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 718-19 (D. Del. 2012) (use of a machine to collect, sort, or organize data did not render claims patent-eligible).

As discussed above, method claims 1 and 13 could be performed by a human without the aid of a computer.  The addition of limitations such as a "computing device" or a "computer-

DOCUMENT PREPARED
ON RECYCLED PAPER

readable medium having . . . computer-executable instructions" does not change the basic character of the patent-ineligible abstract ideas of method claims 1 and 13. *See CyberSource*, 654 F.3d at 1375 ("[T]he basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in program instructions on computer readable medium."). At most, such computer elements make the process of providing a personalized library interface more efficient, but "[u]sing a computer to accelerate an ineligible mental process does not make that process patent-eligible." *Bancorp*, 687 F.3d at 1279 ("the computer merely permits one to manage a stable value protected life insurance policy more efficiently than one could mentally"); *see also SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly . . . ."). It is the personalized presentation of medical information that is "integral to each of [the claims at issue], not the computer machinery that may be used to accomplish it." *Bancorp*, 687 F.3d at 1279 (internal quotation marks omitted).

Dependent claims 11 and 20 do not provide "a *specific way* of doing something with a computer, or a *specific computer* for doing something." *Ultramercial*, 722 F.3d at 1348 (emphasis in original). The computer-related limitations do nothing to explain how those elements are used to perform the methods. For example, the claims do not specify how the computer-related limitations are "specially programmed to perform the steps claimed in the patent" or "how a computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the performance of the method." *See Dealertrack*, 674 F.3d at 1333; *Compression Tech.*, 2013 U.S. Dist. LEXIS 78338, at *23-25 (recited "information processor" did not render claims patent-eligible). Instead, claims 11 and 20 simply say that the abstract idea encompassed by method claims 1 and 13 should be applied using "[a]t least one of" four generic computer-related limitations. That is not enough to render the abstract ideas of

method claims 1 and 13 patent-eligible.  *See Mayo*, 132 S. Ct. at 1294 ("[T]o transform an unpatentable law of nature into a patent-eligible *application* of such a law, one must do more than simply state the law of nature while adding the words "apply it.") (emphasis in original); *Accenture*, 728 F.3d at 1345 ("[S]imply implementing an abstract concept on a computer, without meaningful limitations to that concept, does not transform a patent-ineligible claim into a patent-eligible one."); *Cardpool*, 2013 U.S. Dist. LEXIS 9280, at *6 ("Merely using a computer to apply an abstract idea is insufficient to create patentable subject matter."); *UbiComm*, 2013 U.S. Dist. LEXIS 161559, at *13 (invalidating claims under Section 101 on a motion to dismiss when "the [asserted patent] only makes generic references to computers that are not sufficient to render the claims patentable").

Further, the methods of claims 1 and 13 "can be carried out using existing computers long in use, with no new machinery necessary."  *See Benson*, 409 U.S. at 67 (holding patent-ineligible processes that "can be carried out in existing computers long in use, no new machinery being necessary"); *Highmark*, 687 F.3d at 1324 ("Because [the patent] simply describes [an] abstract idea . . . and then applies that idea using conventional computer technology, it fails to meet section 101's subject matter eligibility requirements.").  Neither the patent claims themselves nor the specification provide any indication that specialized computers or new machinery are required to accomplish the claimed method.  Thus, like the claims in *Benson*, claims 11 and 20 improperly "purport[] to cover any use of the claimed method in a general-purpose digital computer of any type." 409 U.S. at 64.  Under the patent laws, Cogent Medicine cannot gain patent protection on the fundamental concept of a personalized library interface "without a concomitant contribution to the existing body of scientific and technological knowledge."  *Highmark*, 687 F.3d at 1324.  The '879 Patent makes no such contribution.  Instead, claims 11 and 20 do nothing more than apply an abstract idea "using conventional computer technology."  *See id.*

Accordingly, the computer-related elements do not impose any meaningful limitations on claim scope, and claims 11 and 20 fail under Section 101 for the same reasons as independent claims 1 and 13.  *See Fort Props., Inc. v. American Master Lease LLC*, 671 F.3d 1317, 1323

- 16 -

DOCUMENT PREPARED
ON RECYCLED PAPER

1   (Fed. Cir. 2012) ("[T]o impart patent-eligibility to an otherwise unpatentable process under the

2   theory that the process is linked to a machine, the use of the machine must impose meaningful

3   limits on the claim's scope.") (internal quotation marks omitted); *see also Accenture*, 728 F.3d at

4   1345 (claimed computer components including an insurance transaction database, a task library

5   database, a client component, and a server component failed to meaningfully limit application of

6   an abstract idea); *Bancorp*, 687 F.3d at 1278-79 (claims employing computers to track, reconcile,

7   and administer a life insurance policy with a stable value component failed to meaningfully limit

8   application of an abstract idea).

9       As with method claims 1-10 and 13-19, the machine-or-transformation test further

10  demonstrates that claims 11 and 20 are not patent-eligible.  The claims are not tied "to a particular

11  machine" because they recite general purpose computer-related elements. *See, e.g.*, *Dealertrack*,

12  674 F.3d at 1332-34 (claims reciting a "computer-aided" limitation were not "tied to a particular

13  machine").   Regarding the transformation prong, as discussed above, the collection and

14  organization of information is not a transformation.  *See CyberSource*, 654 F.3d at 1374; *OIP*

15  *Techs.*, 2012 U.S. Dist. LEXIS 129396, at *60.

16      **E.    S**YSTEM **C**LAIMS **12 A**ND **21 A**RE **P**ATENT-**I**NELIGIBLE

17      Each of system claims 12 and 21 recite "[a] system for providing data to user."  *Id.* at

18  7:13, 8:33.  System claim 12 merely repeats the language of method claim 1, except that it recites

19  a "user interface and storage means for" doing the first accepting step of claim 1 and a "user input

20  and display means" for doing the second accepting step of claim 1.  *Id.* at 7:14-35.  Similarly,

21  system claim 21 merely repeats the language of method claim 13, except that it includes a "user

22  interface and storage means" for performing the first accepting step of claim 13, a "data input

23  means"  for  performing  the  second  accepting  step  of  claim  13,  and  "display  means"  for

24  performing the two providing steps of claim 13.  *Id.* at 8:34-50.  Because the system claims are

25  drawn to the same patent-ineligible abstract ideas as the method claims, they are invalid under

26  Section 101 for the same reasons as discussed above.

27

28

D**OCUMENT** P**REPARED**
**ON** R**ECYCLED** P**APER**

When system claims and method claims "contain only minor differences in terminology [but] require performance of the same basic process, they should rise or fall together." *Accenture*, 728 F.3d at 1344 (internal quotation marks and citation omitted); *see also Bancorp*, 687 F.3d at 1277 (method claims and system claims were properly treated the same for patent-eligibility purposes).  In this case, the system claims fall with the method claims because they repeat the method claims word-for-word, merely adding various generic "means" for accomplishing the steps of the method claims.  *See Vacation Exchange, LLC v. Wyndham Exchange & Rentals, Inc.*, No. CV 12-04229 RGK (FFMx), slip op. at 6 (C.D. Cal. Sept. 18, 2012) (system claim fell with the corresponding method claim when the system claim "simply recites a means for performing the exact same function, nearly word for word") (Ex. 5).  Such generic "means" for performing a method step "do not meaningfully distinguish the abstract idea over the patent ineligible method claim." *Accenture*, 728 F.3d at 1344.  As in *Accenture*, system claims 12 and 21 are invalid because they "are akin to stating the abstract idea of the method claim and adding the words: apply it on a computer." *Id.* at 1343-44 (internal quotation marks and brackets omitted); *id.* at 1345 ("the system claims themselves only contain generalized software components arranged to implement an abstract concept on a computer" and "do not provide sufficient additional features or limit the abstract concept in a meaningful way").

Further, the system claims discuss the conventional "means" for doing the steps of method claims 1 and 13 at a high level of generality.  Such limitations cannot make the abstract ideas of claims 1 and 13 patent-eligible.  *See Mayo*, 132 S. Ct. at 1300 ("[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable."); *Fort Props.*, 671 F.3d at 1323 ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.") (internal quotation marks omitted).  The '879 Patent specification provides little additional detail about these "means."  For example, the specification states that the "user interface" can be "a keyboard, a touchscreen, or a mouse," and that the "user input means" can be "a keyboard or a mouse."  Ex. 1 at 5:57-58, 5:61.  However, "even if some physical steps are required to obtain information . . . (e.g., entering a query via a

DOCUMENT PREPARED
ON RECYCLED PAPER

1  keyboard, clicking a mouse), such data-gathering steps cannot alone confer patentability."

2  *CyberSource*, 654 F.3d at 1372.  The system claims are thus invalid under Section 101.

3        **F.**    <u>LEAVE TO AMEND WOULD BE FUTILE</u>

4        Where leave to amend the complaint would be futile, the court may deny leave.  *See*

5  *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not

6  err in denying leave to amend where the amendment would be futile."); *Schreiber Distrib. Co. v.*

7  *Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (leave to amend may be denied

8  when "the allegation of other facts consistent with the challenged pleading could not possibly

9  cure the deficiency").  Here, the claims of the '879 Patent are facially invalid because they are

10  directed to patent-ineligible abstract ideas.  Thus, no amendment can rescue Cogent Medicine's

11  patent infringement claims, and the claims should be dismissed without leave to amend.

12  **VI.**    <u>CONCLUSION</u>

13        For the reasons set forth above, this is a case that is well-suited for early dismissal.

14  "Where, as here, a patent describes an abstract idea but discloses no new technology or 'inventive

15  concept,' a robust application of section 101 . . . will save both courts and litigants years of

16  needless litigation."  *Highmark*, 687 F.3d at 1324 (invalidating patent claims under Section 101 at

17  summary judgment).  Wiley thus respectfully requests that the Court dismiss Cogent Medicine's

18  Complaint pursuant to Rule 12(b)(6) without leave to amend.

19

20  Dated:     January 27, 2014     JOHN A. O'MALLEY
21                                    DAVID BEN-MEIR
22                                    RICHARD S. ZEMBEK
                                  DANIEL A. PRATI
                                  SHEILA KADURA

23                                    **FULBRIGHT & JAWORSKI LLP.**

24

25                                    By  s/ David Ben-Meir
26                                        DAVID BEN-MEIR
                                      Attorney for Defendants John Wiley & Sons Inc.
27                                        and John Wiley & Sons Ltd.
                                      E-mail: david.ben-meir@nortonrosefulbright.com

28

DOCUMENT PREPARED
ON RECYCLED PAPER